STATE OF NORTH CAROLINA v. STEPHEN FLAY McDANIEL; RONALD
EDWARD BROOME

No. 9229SC855

(Filed 7 September 1993)

**Homicide § 334 (NCI4th)— nonfelonious assault—involuntary
manslaughter—insufficient evidence**

> The State's evidence was insufficient to support defend-
> ants' convictions of involuntary manslaughter based on a
> nonfelonious assault where it tended to show that decedent
> was walking along the roadway pushing a moped and carrying
> a gas can; defendants stopped their car in a parking lot ahead
> of decedent and began walking along the roadside toward him;
> when decedent saw them, he made a startled move, dropped
> the moped, ran directly into the path of a car, and was struck
> and killed; defendants were not closer than 10 feet to decedent
> when he dropped the moped; and although one defendant told
> a witness at the scene that he knew decedent, there was no
> other testimony of any relationship between defendants and
> decedent and no evidence of any animosity between them.

**Am Jur 2d, Homicide §§ 70, 425 et seq.**

Appeal by defendants from judgments entered 5 March 1992,
by Judge Julia V. Jones in Rutherford County Superior Court.
Heard in the Court of Appeals 9 June 1993.

A Rutherford County grand jury indicted defendants for in-
voluntary manslaughter. At the close of the State's evidence and
again at the close of all of the evidence at trial, the defendants
moved to dismiss the charges. The trial court denied each of these
motions, and the jury convicted defendants of involuntary
manslaughter. The trial court then imposed sentences of three years
imprisonment which were suspended.

*Attorney General Lacy H. Thornburg, by Special Deputy At-
torney General Jo Anne Sanford, for the State.*

*Arledge, Lane & Rogers, by David W. Rogers, for defendant-
appellants.*

STATE v. McDANIEL

[111 N.C. App. 888 (1993)]

McCRODDEN, Judge.

Defendants present four arguments for review by this Court. Because one of these arguments compels us to reverse the judgment of the trial court, we need not address the other three. The argument in which we find merit is defendants' contention that there was insufficient evidence that they acted in an unlawful or criminally negligent manner, alternative elements of involuntary manslaughter, and that the trial court, therefore, erred in denying their motions to dismiss the charges.

At trial the State's evidence tended to show that on 16 July 1988, Mark Hibbard was driving south at approximately 35 m.p.h. on U.S. 221 near Rutherfordton between 6:00 and 7:00 p.m. As he approached an ABC store on his right, he saw a north-bound, brown Chevrolet Chevette turn left into the parking lot of the ABC store, turn around in the parking lot, and park facing the road, approximately 15 feet from it. The driver and a passenger, later identified as the two defendants, got out of the Chevette. Farther ahead of Hibbard, a young man, J.R. Matheson, was carrying a gas can and pushing a moped up the west side of the road toward the Chevette. The defendants started to walk quickly along the roadside toward Matheson. When Matheson saw the defendants walking toward him he made a startled move, dropped the moped and ran across a drainage ditch and into the road, directly in front of Hibbard's car. Hibbard was unable to avoid hitting him and Matheson died as a result of the injuries he suffered.

Testimony differed as to the distance separating the defendants and Matheson at the time he dropped the moped and started to run. At least one witness estimated that the distance was as great as 40 feet; no witness estimated the distance to be less than 10 feet.

One of Hibbard's passengers testified that after the accident she saw one of the defendants drinking a soda and the other crying. Another passenger asked defendant Broome whether he knew the deceased and he said he did not. However, when she asked him again later, he said that he did know the deceased. There was no other testimony as to any relationship between the defendants and the deceased and there was absolutely no evidence of any animosity among them. Neither defendant testified at trial.

We believe that this evidence is insufficient as a matter of law to support a judgment of guilty of involuntary manslaughter. When the court is faced with a defendant's motion to dismiss the charges against him, it must consider all the evidence, competent and incompetent, in the light most favorable to the State. The trial court must grant the State the benefit of every reasonable inference and intendment to be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). To withstand a motion to dismiss, the State must present substantial evidence demonstrating the existence of each element of the crime charged and showing that the defendant was the perpetrator. *State v. Roseman*, 279 N.C. 573, 580, 184 S.E.2d 289, 294 (1971). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Fletcher*, 301 N.C. 709, 712, 272 S.E.2d 859, 860-61 (1981). However, if the evidence only raises a suspicion as to whether the offense charged was committed, then the trial court should allow the motion to dismiss, even though the suspicion roused by the evidence may be strong. *State v. Evans*, 279 N.C. 447, 453, 183 S.E.2d 540, 544 (1971).

"Involuntary manslaughter is the unintentional killing of a human being without either express or implied malice (1) by some unlawful act not amounting to a felony or naturally dangerous to human life, or (2) by an act or omission constituting culpable negligence." *State v. Wilkerson*, 295 N.C. 559, 579, 247 S.E.2d 905, 916 (1978). Although the killing is unintentional, the crime is based on some intentional act. *Id.* at 582, 247 S.E.2d at 918. In this case, the State concedes that there is no evidence in the record that might support a finding that defendants' acts were culpably or criminally negligent and, instead, relies solely on the theory of a non-felonious criminal act, to wit, assault.

There are two ways to show criminal assault in North Carolina. *State v. Roberts*, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967). The traditional common law definition of criminal assault is an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm. *Id.* The focus of this definition of assault is the intent of the person accused. *Id.* By contrast, the other rule, the so-called "show of violence" rule, places the emphasis on the reasonable apprehension of the person assailed. To prove

STATE v. McDANIEL

[111 N.C. App. 888 (1993)]

an assault under this rule, the State must demonstrate some show of violence by the defendant, accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed, which causes him to engage in a course of conduct which he would not otherwise have followed. *Id.*

In this case, the evidence, in the light most favorable to the State, shows no overt act or attempt of violence and certainly no unequivocal appearance of an attempt. The evidence shows at most that the defendants began to walk quickly toward the decedent before he bolted into the road. We find that this evidence is insufficient to raise an inference of criminal assault under the traditional theory.

We further find that the evidence fails under the second theory as well. Obviously, when he ran into the road, the decedent engaged in a course of conduct he would not have followed otherwise. The question here is whether the defendants' actions would have put a person of reasonable firmness in apprehension of immediate bodily injury. We believe that they would not have. There was no evidence of any animosity between the defendants and the decedent. With nothing more appearing, evidence that defendants stopped their car in a parking lot ahead of the decedent and walked quickly toward him along the roadside before he bolted out into the highway and that defendants were not closer than 10 feet to the decedent when he dropped the moped, is not sufficient to raise a reasonable inference that decedent was put into a reasonable apprehension of immediate bodily harm. The best that can be said is that this might raise a suspicion that defendants assaulted the decedent. That is, however, insufficient to justify taking a case to the jury.

Accordingly, we hold that the trial court erred in failing to grant defendants' motion to dismiss at the close of the State's evidence and we reverse its judgment.

Reversed.

Judges EAGLES and LEWIS concur.